

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2001

# Bibby v. Coca Cola Bottling

Precedential or Non-Precedential:

Docket 00-1261

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Bibby v. Coca Cola Bottling" (2001). *2001 Decisions.* Paper 170.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/170

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 1, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1261

JOHN BIBBY,
        Appellant

v.

PHILA. COCA COLA BOTTLING COMPANY; RON WILSON,
Individually, and in his Official Capacity as President of
Operations; CLIFF RISELL, Individually, and in his Official
Capacity as Vice President of Operations; FRAN SMITH,
Individually, and in his Official Capacity as Production
Manager Supervisor; BOB TAYLOR, Individually, and in
his Official Capacity as Supervisor; STEVE FIORE,
Individually, and in his Official Capacity as Quality
Control Supervisor; FRANK BERTCHSCI, Individually, and
in his Official Capacity as Employee at Coca-Cola,
Bottling Company; JOHN KOLB, JR., Individually and in
his Official Capacity as Director of Human Relations at
Coca-Cola Bottling Company; J. BRUCE LLEWELLYN,
Individually, and in his Official capacity as Chief
Executive Officer at Coca-Cola Bottling Company; GENE
KELLER, Individually, and in his Official Capacity as
Warehouse Manager Supervisor

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
Civil No. 98-cv-00287
District Judge: The Honorable Jan E. DuBois

Argued: April 26, 2001

Before: ROTH, BARRY, ALDISERT, Circuit Judges

(Opinion Filed: August 1, 2001)

     Arthur B. Jarrett, Esquire (Argued)
     Jonathan J. James, Esquire
     James & Jarrett
     21 South 12th Street
     Stephen Girard Building, 7th Floor
     Philadelphia, PA 19107

      Attorney for Appellant

     Michael G. Tierce, Esquire (Argued)
     Schnader, Harrison, Segal & Lewis
     1600 Market Street, Suite 3600
     Philadelphia, PA 19103

      Attorney for Appellees

OPINION OF THE COURT

BARRY, Circuit Judge:

John J. Bibby claimed to have been subjected to same-sex sexual harassment at the hands of his employer, the Philadelphia Coca-Cola Bottling Company, in violation of Title VII. The District Court granted summary judgment to the employer, and Bibby appealed. Because we conclude that Bibby did not present sufficient evidence to demonstrate that he suffered discrimination "because of sex," we will affirm the judgment of the District Court.

BACKGROUND

John Bibby has been an employee of the Philadelphia Coca-Cola Bottling Company since June 1978. In 1993, Bibby, who is gay, experienced some medical difficulties, including weight loss, breathing problems, and vomiting blood.1 On August 12, 1993, Bibby was having pains in his

_____

1. While Bibby claimed that he was perceived by his employer and his co-workers as having HIV/AIDS, he did not bring a claim for discrimination on the basis of perceived disability under the Americans with Disabilities Act. 42 U.S.C. S 12101 et seq.

stomach and chest when he was found by his supervisor with his eyes closed and a machine for which he was responsible malfunctioning with product being destroyed. He was accused of sleeping on the job. Bibby asked for permission to go to the hospital and was told by the supervisor to "just go." As he was leaving, the supervisor told him he was terminated, although in fact he was suspended with the intent to terminate. Bibby was hospitalized for several weeks for treatment of depression and anxiety. During his suspension and after receiving clearance from his treating physician, he met with his supervisors to arrange his return to work. At this meeting, he was told that he would be paid $5,000 and would be given benefits and unemployment benefits for six months if he resigned, but if he did not accept the offer, he would be terminated. Bibby refused the offer and was terminated but, following arbitration of a grievance he filed, he was reinstated and awarded back pay.

On December 23, 1993, the day he returned to work, Bibby was assaulted in a locker room by a co-worker, Frank Berthcsi. Berthcsi told Bibby to get out of the locker room, shook his fist in Bibby's face, grabbed Bibby by the shirt collar, and threw him up against the lockers. On January 22, 1995, Berthcsi again came after Bibby. 2 On that day, Bibby was at the top of a set of steps working at a machine that puts cases of soda on wooden or plastic pallets. Berthcsi was driving a forklift loaded with pallets, and he "slammed" the load of pallets under the stairs, blocking Bibby's exit from the platform on which he was standing. Bibby paged a supervisor, and Berthcsi was ordered to remove the pallets. He refused. Berthcsi and Bibby then exchanged some angry words, and Berthcsi repeatedly yelled at Bibby that "everybody knows you're gay as a three dollar bill," "everybody knows you're a faggot," and "everybody knows you take it up the ass." 3 Later that

_____

2. In Bibby's brief to this Court, he claims that Berthcsi "regularly engaged in harassment of a sexual nature with violent features against [Bibby]." The brief offers no citation to support this claim, and the record
reveals only the December 1993 and January 1995 incidents.

3. We do not usually reproduce such gratuitously crude language in our opinions. Here, however, the essential dispute concerns whether the

3

day, Berthcsi called Bibby a "sissy." Bibby filed a complaint with the union and with the employer, and Berthcsi was suspended pending an investigation. Bibby refused the union's request that he withdraw the complaint, and Berthcsi's employment was terminated. The union filed a grievance on behalf of Berthcsi, and he was reinstated subject to the employer's condition that he undergo anger management training.

Bibby claims that supervisors also harassed him by yelling at him, ignoring his reports of problems with machinery, and arbitrarily enforcing rules against him in situations where infractions by other employees would be ignored. He does not assert that there was any sexual component to any of this alleged harassment. Finally, Bibby claims that graffiti of a sexual nature, some bearing his name, was written in the bathrooms and allowed to remain on the walls for much longer than some other graffiti. The record does not disclose the contents of any graffiti that allegedly mentioned Bibby's name.

Shortly after the January 1995 incident with Berthcsi, Bibby filed a complaint with the Philadelphia Human Rights Commission (PHRC) alleging that he was being discriminated against on the basis of his sexual orientation. In late 1997, after completing an investigation, the PHRC notified Bibby that it was closing the case and issuing him a 90-day right to sue letter.

On January 20, 1998, Bibby filed a pro se complaint in the Eastern District of Pennsylvania. He subsequently

_____

language and actions of Bibby's co-workers and supervisors constituted actionable sexual harassment, which requires "[c]onduct that is . . . severe or pervasive enough to create an objectively hostile or abusive work environment -- an environment that a reasonable person would find hostile or abusive . . . ." Oncale v. Sundowner Offshore Services, Inc.,
523 U.S. 75, 81 (1998), (quoting Harris v. Forklift Systems, Inc., 510 U.S.
17, 21 (1993)). To indulge in delicacy in light of what the Court described
as a "crucial" requirement would obscure the issue before this Court. See Simonton v. Runyon, 232 F.3d 33, 35 (2d Cir. 2000) ("we think it is important both to acknowledge the appalling persecution [the plaintiff] allegedly endured and to identify the precise nature of the abuse so as to distinguish this case from future cases as they arise").

4

retained counsel, however, and an amended complaint was filed on June 30, 1998. The amended complaint named as defendants the employer and nine individual officers or employees of the employer. In the amended complaint, Bibby alleged that he had been sexually harassed in violation of Title VII, and sought compensatory and punitive damages. The complaint also included two supplemental state law claims, one for intentional infliction of emotional distress and one for assault and battery.

On November 20, 1998, the District Court granted in part defendants' motion to dismiss, dismissing all individual defendants and dismissing Bibby's assault and battery claim.4 Following a period of discovery, the employer filed a motion for summary judgment on the remaining counts. On March 2, 2000, the District Court granted this motion. In its twenty-page memorandum and order, the Court determined that the evidence indicated that Bibby was harassed because of his sexual orientation and not because of his sex. Because Title VII provides no protection from discrimination on the basis of sexual orientation, summary judgment was granted on Bibby's Title VII claim. Having dismissed the only federal claim, the Court chose not to exercise supplemental jurisdiction over the remaining state law claim and dismissed that claim without prejudice.

It is from the grant of summary judgment to the employer that Bibby appeals. Our review is plenary. See Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co., 124 F.3d 508, 515 (3d Cir. 1997). We have jurisdiction under 28 U.S.C.S 1291.

This appeal presents a single issue: did Bibby present evidence sufficient to support a claim of same-sex sexual harassment under Title VII? The District Court found that Bibby was harassed because of his sexual orientation, not because of his sex, and therefore rejected his sexual harassment claim. Bibby argues that the District Court erred and further argues that its finding, if upheld, would place a special burden on gay and lesbian plaintiffs alleging same-sex sexual harassment because they will be required to prove that harassment was not motivated by their sexual orientation. We disagree on both scores.

_____

4. Bibby has not appealed the dismissal of these claims.

Title VII of the 1964 Civil Rights Act, 42 U.S.C.S 2000e et seq., provides that "[i]t shall be an unlawful employment practice . . . to discriminate against any individual . . . because of . . . sex." 42 U.S.C. S 2000e-2(a)(1). It is clear, however, that Title VII does not prohibit discrimination based on sexual orientation. Simonton v. Runyon , 232 F.3d 33, 35 (2d Cir. 2000); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 259 (1st Cir. 1999); Williamson v. A.G. Edwards & Sons, Inc., 876 F.2d 69, 70 (8th Cir. 1989). Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation. See, e.g., Employment Nondiscrimination Act of 1996, S. 2056, 104th Cong. (1996); Employment Non-Discrimination Act of 1995, H.R. 1863, 104th Cong. (1995); Employment Non-Discrimination Act of 1994, H.R. 4636, 103d Cong. (1994). Thus, Bibby can seek relief under Title VII only for discrimination because of sex.

Until 1998, it was unclear whether and under what circumstances Title VII would apply in a case of sexual harassment where both the harasser and the victim were of the same sex. The Fifth Circuit held that Title VII absolutely precluded a cause of action where both the harasser and victim were male. Garcia v. Elf Atochem North America, 28 F.3d 446, 451-52 (5th Cir. 1994). The Fourth Circuit, however, found a cause of action for same-sex sexual harassment under Title VII but only if the harasser was homosexual. Compare McWilliams v. Fairfax County Board of Supervisors, 72 F.3d 1191, 1195 (4th Cir. 1996) ("a claim does not lie where both the alleged harassers and the victim are heterosexuals of the same sex"), with Wrightson v. Pizza Hut of America, Inc., 99 F.3d 138, 143 (4th Cir. 1996) ("a same-sex `hostile work environment' sexual harassment claim may lie under Title VII where a homosexual male (or female) employer discriminates against an employee of the same sex"). Finally, the Seventh Circuit suggested that same-sex harassment was always actionable as long as the harassment was sexual in nature, regardless of the sex, sexual orientation, or motivation of the harasser and regardless of the sex of the victim. Doe v. City of Belleville, 119 F.3d 563, 576 (7th Cir. 1997) (proof of a desire to discriminate against one gender is not

6

necessary "when the harassment has explicit sexual overtones").

In Oncale v. Sundowner Offshore Services, Inc. , 523 U.S. 75 (1998), the Supreme Court unanimously held that Title VII does provide a cause of action for same-sex sexual harassment. Id., 523 U.S. at 79. In Oncale, the Court reviewed a Fifth Circuit decision which held that, as a matter of law, Title VII categorically barred any claim for same-sex sexual harassment. Id. at 77. The Court reversed. Title VII, it observed, protects men as well as women and just as there can be no absolute presumption that a person of one race would not discriminate against another person of the same race, there can be no absolute presumption that a person of one gender would not discriminate against another person of the same gender. Id. at 78. The Court reasoned that it is not the sex of the harasser or the victim that is important to a sexual harassment claim, but, rather, what is important is that the victim "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted `discriminat[ion] . . . because of . . . sex.' " Id. at 81 (emphasis, ellipses, and brackets in original).

The question of how to prove that same-sex harassment is because of sex is not an easy one to answer. As the Supreme Court noted in Oncale, when the harasser and victim are of the opposite sex, there is a reasonable inference that the harasser is acting because of the victim's sex. Id. at 80. Thus, when a heterosexual man makes implicit or explicit proposals of sexual activity to a woman co-worker or subordinate, it is easy to conclude or at least infer that the behavior is motivated by her sex. Similarly, if a man is aggressively rude to a woman, disparaging her or sabotaging her work, it is possible to infer that he is acting out of a general hostility to the presence of women in the workplace. These inferences are not always so clear when the harasser and victim are of the same sex.

There are several situations in which same-sex harassment can be seen as discrimination because of sex. The first is where there is evidence that the harasser sexually desires the victim. Id. at 80. Thus, when a gay or lesbian supervisor treats a same-sex subordinate in a way

7

that is sexually charged, it is reasonable to infer that the harasser acts as he or she does because of the victim's sex.

Same-sex harassment might also be found where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace. Id. (stating that same-sex sexual harassment could be found "if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace"). For example, a woman chief executive officer of an airline might believe that women should not be pilots and might treat women pilots with hostility amounting to harassment. Similarly, a male doctor might believe that men should not be employed as nurses, leading him to make harassing statements to a male nurse with whom he works. In each of these hypothetical situations, it would be easy to conclude that the harassment was caused by a general hostility to the presence of one sex in the workplace or in a particular work function, and, therefore, amounted to discrimination because of sex.

Further, although it is less clear, a plaintiff may be able to prove that same-sex harassment was discrimination because of sex by presenting evidence that the harasser's conduct was motivated by a belief that the victim did not conform to the stereotypes of his or her gender. Simonton, 232 F.3d at 37–38 (discussing this theory but declining to rule on it because the plaintiff had not raised it before the District Court); Higgins, 194 F.3d at 259–60 (also declining to rule on this theory because it had been waived by the plaintiff); City of Belleville, 119 F.3d at 580–83 (holding that where co-workers verbally and physically harassed a young man because he wore an earring, repeatedly asked him whether he was a girl or a boy, and threatened to assault him sexually, he had presented sufficient evidence to support a conclusion that the harassment amounted to discrimination because of sex).5

_____

5. The judgment in City of Belleville was vacated and the case remanded by the Supreme Court "for further consideration in light of Oncale. . . ." 523 U.S. 1001. It would seem, however, that the gender stereotypes

8

The gender stereotypes method for proving same-sex sexual harassment is based on Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), a case in which the Supreme Court reviewed the sex discrimination claim of a woman who had been denied partnership in an accounting firm at least in part on the basis that she was "macho," "overcompensated for being a woman," needed "a course in charm school," was "masculine," and was "a lady using foul language." Id. at 235. A partner advised the plaintiff that if she wished to improve her chances of earning partnership, she should "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." Id. A plurality of the Court agreed that "[i]n the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." Id. at 250. The Court noted that "we are beyond

_____

holding of City of Belleville was not disturbed. In deciding the case, the Seventh Circuit relied on alternative holdings. The first was that where the harassment was sexual in nature, it was not necessary for the plaintiff to prove that it was motivated by the victim's gender. City of Belleville, 119 F.3d at 580. The second was that if proof of sex discrimination was necessary, the evidence that the victim's harassers sought to punish him for failing to live up to expected gender stereotypes would be sufficient to prove such discrimination. Id. at 580-83. The first holding was clearly wrong in light of Oncale's requirement that all sexual harassment plaintiffs must prove that the harassment was discrimination because of sex. There is nothing in Oncale, however, that would call into question the second holding. As we discuss above, the gender stereotypes argument is squarely based on Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Absent an explicit statement from the Supreme Court that it is turning its back on Price Waterhouse, there is no reason to believe that the remand in City of Belleville was intended to call its gender stereotypes holding into question. City of Belleville settled
before there was a decision on remand, so it is not possible to know if the Seventh Circuit would have continued to apply the gender stereotypes holding. District courts in that Circuit, however, have continued to treat that holding as binding on them. See, e.g., Jones v. Pacific Rail Services, No. 00 C 5776, 2001 WL 127645, *2 (N.D. Ill. February 14, 2001); Spearman v. Ford Motor Co. , No. 98 C 0452, 1999 WL 754568, *6 (N.D. Ill. September 9, 1999); EEOC v. Trugreen Limited Partnership, 122 F.Supp.2d 986, 989-90 (W.D.Wis. 1999).

9

the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for `[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.' " Id. at 251 (quoting Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 707 n.13 (1978)) (some internal quotation marks omitted). Neither of the two concurring opinions in Price Waterhouse disagreed.

Relying on Price Waterhouse, and as we noted above, the Seventh Circuit held that where evidence indicated that the harassment of a sixteen-year old young man was motivated by his co-workers' belief that because he wore an earring he was not sufficiently masculine, there was sufficient evidence to support a finding that the harassment amounted to discrimination because of sex. City of Belleville, 119 F.3d at 581 ("a man who is harassed because his voice is soft, his physique is slight, his hair is long, or because in some other respect he exhibits his masculinity in a way that does not meet his coworkers' idea of how men are to appear and behave, is harassed `because of ' his sex").

Thus, there are at least three ways by which a plaintiff alleging same-sex sexual harassment might demonstrate that the harassment amounted to discrimination because of sex -- the harasser was motivated by sexual desire, the harasser was expressing a general hostility to the presence of one sex in the workplace, or the harasser was acting to punish the victim's noncompliance with gender stereotypes. Based on the facts of a particular case and the creativity of the parties, other ways in which to prove that harassment occurred because of sex may be available. See Oncale, 523 U.S. at 80-81 (noting that "[a] same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace"); Shepherd v. Slater Steels Corp., 168 F.3d 998, 1009 (7th Cir. 1999) ("we discern nothing in the Supreme Court's [Oncale] decision indicating that the examples it provided were meant to be exhaustive rather than instructive").

10

That having been said, however, it is clear that "[w]hatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted `discrimina[tion] . . . because of . . . sex.' " Oncale at 81 (emphasis, ellipses, and brackets in original). Bibby simply failed in this respect; indeed, he did not even argue that he was being harassed because he was a man and offered nothing that would support such a conclusion. There was no allegation that his alleged harassers were motivated by sexual desire, or that they possessed any hostility to the presence of men in the workplace or in Bibby's particular job. Moreover, he did not claim that he was harassed because he failed to comply with societal stereotypes of how men ought to appear or behave or that as a man he was treated differently than female co-workers. His claim was, pure and simple, that he was discriminated against because of his sexual orientation. No reasonable finder of fact could reach the conclusion that he was discriminated against because he was a man.6

As noted earlier, Bibby argues that in reaching this conclusion, we will be placing an extra burden on gay and lesbian plaintiffs bringing an action for same-sex sexual harassment by requiring that such plaintiffs prove that their harassers were not motivated by anti-gay animus. Bibby is wrong. Whatever the sexual orientation of a plaintiff bringing a same-sex sexual harassment claim, that plaintiff is required to demonstrate that the harassment was directed at him or her because of his or her sex. Once such a showing has been made, the sexual orientation of the plaintiff is irrelevant. In addition, once it has been shown that the harassment was motivated by the victim's sex, it is no defense that the harassment may have also

_____

6. Given this conclusion, we need not reach the additional requirement that the alleged conduct was "severe or pervasive enough to create an objectively hostile or abusive work environment . . . ." Oncale, 523 U.S. at 81 (internal quotation marks omitted). We note, however, that the only specifics Bibby has alleged are one physical assault (with no sexual component) and one incident of serious name calling (with a sexual component).

11

been partially motivated by anti-gay or anti-lesbian animus. For example, had the plaintiff in Price Waterhouse been a lesbian, that fact would have provided the employer with no excuse for its decision to discriminate against her because she failed to conform to traditional feminine stereotypes.

Harassment on the basis of sexual orientation has no place in our society. See Simonton, 232 F.3d at 35 (harassment on the basis of sexual orientation "is morally reprehensible whenever and in whatever context it occurs, particularly in the modern workplace"); Higgins, 194 F.3d at 259 (harassment because of sexual orientation"is a noxious practice, deserving of censure and opprobrium"). See also Rene v. MGM Grand Hotel, Inc., 243 F.3d 1206, 1209 (9th Cir. 2001) (quoting Higgins). Congress has not yet seen fit, however, to provide protection against such harassment. Because the evidence produced by Bibby-- and, indeed, his very claim -- indicated only that he was being harassed on the basis of his sexual orientation, rather than because of his sex, the District Court properly determined that there was no cause of action under Title VII.

CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

12