**Fredrick COLLINS, Plaintiff,**

v.

**TRL, INC., Defendant.**

**No. 3:01 CV 2229.**

United States District Court, M.D. Pennsylvania.

March 19, 2003.

---

Richard E. O'Neill, The O'Neill Law Office, Norristown, PA, for plaintiff.

Mark A. Fontana, Renee C. Mattei Myers, Reed, Smith LLP, Michael McAuliffe Miller, Reed Smith, L.L.P., Harrisburg, PA, for defendant.

## *MEMORANDUM*

MUNLEY, District Judge.

Before the court for disposition is the defendant's motion for summary judgment with respect to plaintiff's complaint alleging sexual harassment/hostile work environment. The plaintiff is Fredrick Collins, and the defendant is TRL, Incorporated. The matter is ripe for disposition having been fully briefed. For the reasons that follow, the motion will be denied in part and granted in part.

### Background

Plaintiff has brought a sexual harassment/hostile work environment lawsuit against his former employer. Plaintiff asserts same-sex sexual harassment. He worked for the defendant as a trailer mechanic beginning on October 27, 1999.

Def. Ex. A, Plaintiff's Deposition (hereinafter "Pl. Dep.") at 21. During his first week on the job, which was a week of training, Allen Clark served as the plaintiff's supervisor. *Id.* at 24. On the first day of the job, Plaintiff states that Clark asked him if he was a homosexual. *Id.* at 52. Plaintiff informed Clark that he was not. *Id.* at 52–54. After the initial week, the plaintiff and Clark did not work the same shift. However, there was some overlap in the hours that they were at work. *Id.* at 32.

A second incident occurred a month to a month and a half after the plaintiff commenced his employment. Clark reached for plaintiff's groin area and said "Oop, got wood?" Pl. Dep. at 55. Plaintiff requested that Clark stop taking such actions. *Id.* After the first "grabbing" incident, the plaintiff spoke to his supervisor, Tony Carberry, about Clark's behavior. *Id.* at 57. Carberry took Clark's behavior as a joke and laughed. *Id.* at 58. Sometime after this incident, the record is not clear on when, plaintiff was whistling on the job. Co-workers had apparently told the plaintiff to stop whistling because they were "sick of it." Pl. Dep. at 59. However, in response to the whistling, Clark said to him, "You ought to put them lips where they belong," and he grabbed his own crotch. *Id.*

In February 2000, a second "grabbing" incident took place. Plaintiff states that "[Clark] just reached over, and he basically actually touched me. And I pulled right away. I said, 'What the hell is the matter with you?' And he says, What? ... You can't take a joke?" Pl. Dep. at 60. Clark did not "grab" the plaintiff but Collins felt his fingers touching. *Id.* at 64. Plaintiff again complained to Carberry about Clark's actions, which he referred to as "sexual harassment." Carberry responded, "Oh, you and your legal terms." *Id.* at 61.

A third reaching incident occurred in March 2000. Clark reached for the plaintiff and said, "Hey, got wood?" Plaintiff informed Clark that he was "sick" of his behavior and he responded, "Boy, you can't take a joke." Plaintiff informed him that "I told you last time, no, not in that way." Pl. Dep. at 62. Therefore, plaintiff asserts that Clark reached for plaintiff's groin on three separate occasions from October 1999 until March 2000. *Id.* at 68. In addition to the sexual comments, Clark also told the plaintiff on eight or nine times that he was not performing his job adequately. *Id.* at 71. Ultimately, plaintiff met with Carberry and Paul Gossard, the defendant's vice president of fleet maintenance, regarding Clark's behavior. After this meeting, the harassment stopped. *Id.* at 92.

Plaintiff does not know whether Clark is a homosexual or whether he was actually making sexual propositions. Pl. Dep. at 62. He did, however, hear Clark joke in a sexual manner with other individuals in the shop "all the time." *Id.* at 62. He, in fact, witnessed Clark grab at others in the same way as he grabbed at plaintiff. *Id.* at 63. Plaintiff further testified that generally people other than Clark made jokes or used sexual innuendoes at that job site. *Id.* at 75–76. One of plaintiff's co-workers indicates that it was a running joke at TRL, Inc., to grab a co-worker by the genitals, and that this was called the "warehouse shake." (Pl.Ex. E, Armitage Affidavit). The co-worker also mentions that Clark annoyed himself and others with his lewd and/or sexual comments. *Id.*

Plaintiff began working in October 1999, and in November 1999, he was informed that he would be moved to the second shift from the third shift. Pl. Dep. at 34. Plaintiff reminded the defendant that he could not work on the second shift, and he remained on the third shift. *Id.* After

complaining of the sexual harassment, plaintiff was informed that he had been moved to the second shift in April or May 2000. *Id.* at 35–36. After the switch, plaintiff did not return to work and after three days the defendant informed the plaintiff that they considered him as resigned. Plaintiff then filed the instant employment discrimination case.

Plaintiff's complaint is broken down into the following five counts: Count One, Hostile Work Environment and Sexual Harassment; Count Two, Retaliation; Count Three, Negligent Supervision; Count Four, Hostile Work Environment and Sexual Harassment (violation of Section 5 of the Pennsylvania Human Relations Act (hereinafter "PHRA")); Count Five, Retaliation (violation of Section 5 of the PHRA).[1] In June 2002, we dismissed Count Three of the complaint, negligent supervision, for failure to state a cause of action upon which relief could be granted. At the close of discovery, the defendant filed a motion for summary judgment, bringing the case to its present posture.

**Standard of review**

The granting of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Knabe v. Boury,* 114 F.3d 407, 410 n. 4 (3d Cir.1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505,

91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In analyzing summary judgment motions in cases involving employment discrimination, a burden-shifting analysis is utilized which was set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish unlawful discrimination. The burden then shifts to the employer to proffer a legitimate, nondiscriminatory

---

**1.** Plaintiff's Complaint lists what we have designated "Count Five" as "Count Six." However, the Complaint contains only five counts.

reason for terminating her. Once the employer has offered a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the proffered reason was merely pretextual. *Geraci v. Moody–Tottrup, Int'l Inc.*, 82 F.3d 578, 580 (3rd Cir.1996) (citing *McDonnell Douglas, supra* and *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

The defendant claims that judgment in its favor should be granted with respect to the sexual discrimination/harassment claims, hostile work environment claims and retaliation claims. We shall address each separately.

## 1. Sexual discrimination/sexual harassment.

Counts One and Four of the plaintiff's complaint assert causes of action against the defendant for sexual harassment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and the PHRA.[2] First, the defendant contends that judgment should be granted in its favor because plaintiff has not set forth facts sufficient to establish a *prima facie* case of sexual discrimination/sexual harassment or hostile work environment. Defendant claims that the plaintiff's same-sex gender discrimination claim cannot stand as the plaintiff has not established that plaintiff has been the subject of discrimination due to his sex.

Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, **sex**, or national origin." 42 U.S.C. § 2000e–2(a)(1) (emphasis added). The United States Supreme Court has interpreted this statute to include sex discrimination where, as is alleged in the instant case, the plaintiff and the discriminating party are the same sex. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). The Court stated, however, that in a same-sex sexual discrimination case, the plaintiff "must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* because of sex." *Id.* at 81, 118 S.Ct. 998 (emphasis in original, quotation marks omitted).

The Court explained as follows:

Courts and juries have found the inference of discrimination easy to draw in most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the al-

---

**2.** Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts. Consequently, it is proper to treat the plain-

tiff's PHRA claims as coextensive with his Title VII claims. *Kelly v. Drexel University*, 94 F.3d 102, 105 (3d Cir.1996).

leged harasser treated members of both sexes in a mixed-sex workplace.

*Id.* at 80–81, 118 S.Ct. 998.

■ The Third Circuit Court of Appeals, addressed the type proof necessary to support a claim of same-sex sexual harassment under Title VII in *Bibby v. Phila., Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3d Cir.2001). The court discussed several situations in which same-sex sexual harassment can be seen as discrimination because of sex. These situations are: 1) Where there is evidence that the harasser sexually desires the victim, i.e. the harasser is homosexual; 2) Where the harasser displays hostility to the presence of a particular sex in the workplace. An example is a male doctor who believes that men should not be nurses, harassing a male nurse; and 3) Where the harasser's conduct was motivated by a belief that the victim did not conform to stereotypes of his or her gender. *Id.* at 262.

Defendant contends that the plaintiff has failed to produce any evidence that the complained of conduct was sexually motivated. The plaintiff contends that he has presented evidence that the alleged-harasser treated women differently from how he treated men and that the harasser was drawn to him for sexual reasons. We are unconvinced by the plaintiff's arguments, but we shall address them both.

**A.  Did the alleged harasser treat women differently?**

■ Plaintiff presents evidence that the defendant did not harass women while they were in the workplace. *See, e.g.,* Pl.Ex. B, Collins Aff.; Pl.Ex. C., Wells Aff. We conclude that it is not sufficient for the plaintiff to merely present evidence that the defendant did not harass women. It must be established that the harasser displayed hostility to the presence of a particular gender in the workplace. The Third Circuit has explained as follows:

For example, a woman chief executive officer of an airline might believe that women should not be pilots and might treat women pilots with hostility amounting to harassment. Similarly, a male doctor might believe that men should not be employed as nurses, leading him to make harassing statements to a male nurse with whom he works. In each of these hypothetical situations, it would be easy to conclude that the harassment was caused by a general hostility to the presence of one sex in the workplace or in a particular work function, and therefore, amounted to discrimination because of sex.

*Bibby*, 260 F.3d at 261.

In the instant case, plaintiff has presented no proof that Clark displayed particular hostility toward one sex at the workplace. In fact, the record fails to reveal whether there were any women working as trailer mechanics at the time, or that Clark believes that the trailer mechanic position is a job unsuitable for a man to perform. Plaintiff's deposition revealed that no women worked in the trailer shop with him. A woman worked in the tractor shop office, but she worked first shift and plaintiff worked third shift. Therefore, their only interaction was when plaintiff was leaving work. Pl. Dep. at 77. We find that the lack of harassment toward women in the instant case would not lead a reasonable fact finder to be able to conclude that the harassment was because of the plaintiff's sex.

**B.  Is there evidence that the harasser is a homosexual?**

■ Next, plaintiff claims that there is evidence that he was harassed because Clark sexually desired him. The Third Circuit has explained, same-sex harassment can be seen as discrimination because of sex where a homosexual supervi-

sor treats a same-sex subordinate in a way that is sexually charged. *Bibby,* 260 F.3d at 261. In the instant case, no evidence has been presented that the alleged harasser is homosexual. When asked at his deposition whether he thought that Clark was homosexual, the plaintiff replied that he did not know. Pl. Dep. at 53.

Plaintiff claims that a reasonable jury could conclude that the alleged harasser was motivated by a sexual desire for the plaintiff. We disagree. It appears from the record that actions that Clark took were performed in the presence of others who would then laugh regarding what happened. When asked at his deposition whether he thought Clark was actually propositioning him sexually, the plaintiff answered, "I don't know." Pl. Dep. at 62. The plaintiff also testified that when he confronted Clark about the actions, Clark replied, "Boy, you can't take a joke." *Id.* Plaintiff further stated that he heard Clark joke in a sexual manner with other individuals in the shop "all the time." *Id.* Generally, others besides Clark made jokes or used sexual innuendoes at that job site. *Id.* at 75–76.

Plaintiff submits affidavits in support of his position, however, the affidavits indicate that the behavior plaintiff complains of was not sexually motivated. For example, plaintiff presents the affidavit of Anthony Carberry, which states that "I remember while at TRL, Inc., Al Clark and others in the workplace, making lewd comments. Some of these comments were of a sexual nature. I can remember that these lewd, and or sexual comments were made when Fredrick Collins was around. Sometimes these comments were directed at him but I didn't believe they were serious." Pl.Ex. D, Carberry Affidavit. Another co-worker indicates that it was a running joke at TRL, Inc., to grab a co-worker by the genitals, and that this was called the "warehouse shake." Pl.Ex. E,

Armitage Affidavit. The co-worker also mentions that he remembers Clark annoying other workers and himself, that he made lewd and/or sexual comments. *Id.*

The United States Supreme Court has indicated that courts and juries should not mistake ordinary socializing in the workplace for discriminatory conditions of employment. *Oncale,* 523 U.S. at 81, 118 S.Ct. 998. Such socializing includes male-on-male horseplay or intersexual flirtation. *Id.* The Court went on to note that:

> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Id.* at 81–82, 118 S.Ct. 998.

Based upon the social context surrounding the actions in the instant case, as presented by the plaintiff himself, we find that a reasonable jury could not conclude that the alleged harasser acted out of sexual desire. We note again that the plaintiff, himself, when asked could not say that the actions were motivated by a desire to have sex with him. Pl. Dep. at 62. If the plaintiff himself cannot make such a decision, and in light of all the other evidence, we find that a reasonable jury could not find that Clark's actions were motivated by sexual desire.

Plaintiff has not presented sufficient evidence to pursue a same-sex sexual harassment cause of action. Accordingly, summary judgment shall be granted to the defendant on Counts One and Four of the

plaintiff's complaint to the extent that Counts One and Four allege discrimination based upon sex. The remainder of the allegations in Counts One and Four assert sexual harassment/hostile work environment, which we will discuss next.

## 2. Sexual harassment/Hostile work environment

▮ Plaintiff also claims that he was subject to a hostile work environment based upon sexual harassment. To make out a *prima facie* case of hostile work environment/sexual harassment under Title VII, a plaintiff must prove (1) the employee suffered intentional discrimination because of his sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir.1997).

▮ In the instant case, plaintiff does not have a valid hostile work environment claim, because as we discussed above, he cannot establish that he was discriminated against because of his sex. Moreover, when an employer's response stops the harassment, there can be no employer liability under Title VII. *Weston v. Pennsylvania*, 251 F.3d 420, 427 (3d Cir.2001). In the instant case, the plaintiff admits that the harassment ended after he discussed the problem with Paul Gossard, the defendant's vice president of fleet maintenance. Pl. Dep. at 47, 92. Accordingly, judgment will be granted to the defendant's on the portions of Count One and Four that assert causes of action for sexual harassment/hostile work environment.

## 3. Retaliation

Next, the defendant attacks the plaintiff's claims of retaliation. The plaintiff alleges that the defendant retaliated against him for having complained of the alleged sexual harassment. The plaintiff's retaliation claims fall under both Title VII of the Civil Rights of 1964 and the PHRA. *See* Compl. Cts. 2 and 5. Section 704(a) of Title VII prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation ... under this subchapter." 42 U.S.C. § 2000e–3(a). Likewise, the PHRA makes it unlawful for an employer "to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge ... under this act." 43 P.S. § 955(d); *see also Woodson v. Scott Paper Co.*, 109 F.3d 913, 919–20 (3d Cir.) *cert. denied*, 522 U.S. 914, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997)

▮ The law provides that to establish a *prima facie* case of retaliation the plaintiff must demonstrate that (1) he was engaged in protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the protected activity and the discharge. *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 286 (3d Cir.2001).

The Third Circuit has explained the remainder of the analysis as follows:

> If an employee establishes a prima facie case of retaliation under the ADA, the burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse employment action. *Woodson*, 109 F.3d at 920 n. 2. The employer's burden at this stage is "relatively light: it is satisfied if the defendant articulates any legitimate reason

for the [adverse employment action]; the defendant need not prove that the articulated reason actually motivated the [action]." *Id.*

If the employer satisfies its burden, the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action. *Id.; see also St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 519, 113 S.Ct. 2742, 2753–54, 125 L.Ed.2d 407 (1993) ("It is not enough ... to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.") (emphasis omitted); *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1067–68 (3d Cir.1996) (en banc) (explaining how plaintiff may satisfy burden), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997). The plaintiff must prove that retaliatory animus played a role in the employer's decisionmaking process and that it had a determinative effect on the outcome of that process. *Woodson,* 109 F.3d at 931–35 (discussing proper standard to apply in Title VII retaliation case). The burden of proof remains at all times with the plaintiff. *Id.* at 920 n. 2.

*Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500–01 (3d Cir.1997)

To obtain summary judgment, the employer must show that the trier of fact could not conclude, as a matter of law, (1) that retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on the outcome of that process. These two factors may be met by establishing the plaintiff's inability to raise a genuine issue of material fact as to either: (1) one or more elements of the plaintiff's *prima facie* case or, (2) if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation. *Id.* at 501. In the instant case, the defendant attacks both the *prima facie* case and the plaintiff's ability to prove pretext. We shall address each separately.

## A. *Prima facie* case

■ No issues have been raised with regard to the first element of the *prima facie* case. Therefore, for the purposes of ruling on the summary judgment motion, we will assume that the plaintiff did engage in a protected activity. The first argument that the defendant raises is that the plaintiff cannot establish a *prima facie* case because no adverse employment action was taken against him. Plaintiff, however, claims he was constructively discharged. He worked on the third shift, and he told his employer that he could only work the third shift because of childcare issues. The defendant changed him to second shift effective May 30, 2000. After not arriving for work for the first three days of his new shift, defendant notified the plaintiff that they considered him to have "voluntary resigned" from his job. Def. Ex. B., following Employee Handbook, letter dated June 5, 2000.

■ The test applied to constructive discharge claims is objective. We must determine whether a reasonable jury could conclude that the defendant's action made work so difficult that a reasonable person would have felt compelled to resign. *Connors v. Chrysler Financial Corp.* 160 F.3d 971, 974 (3d Cir.1998). Plaintiff claims in his deposition that when he took the job, he told the defendant that he could only work third shift because of childcare issues. Pl. Dep. at 84. We find that a reasonable jury could conclude that moving the plaintiff to second shift would in fact be a constructive discharge and thus an adverse employment action.

▮ Defendant contends that the retaliation claims should nonetheless be dismissed because plaintiff cannot establish the third element of a *prima facie* case, that is a causal link between his protected activity and the adverse employment action. Plaintiff claims that there is a causal connection because of the temporal proximity between taking the protected action and the constructive discharge. In addition, plaintiff claims that the antagonism in the interim also supports a causal connection. ˎ

Defendant notified the plaintiff he had been re-assigned to the second shift a week after complaining about the harassment.[3] Such a close temporal connection between the protected activity and the "adverse employment action" is indicative of a causal link. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279–80 (3d Cir. 2000) (explaining that a close temporal proximity between the adverse employment action and the protected activity is suggestive of a causal connection).

Plaintiff has additional evidence, however, that indicates a causal connection. As discussed more fully below, plaintiff's affidavit indicates that the defendant threatened to fire him if he continued to complain of sexual harassment.

Accordingly, we find that the plaintiff has submitted sufficient evidence to establish a *prima facie* case. The burden shifts to the defendant to provide legitimate non-discriminatory reasons for the employment action, and then the burden shifts back to the plaintiff to provide evidence that the defendant's purported reason for the ac-

tion is merely pretext for unlawful discrimination. *Krouse*, 126 F.3d at 500–01.

## B. Pretext

▮ The defendant claims that the plaintiff cannot rebut its non-retaliatory reasons for the decision to re-assign him to the second shift. Defendant asserts that in the spring of 2000, TRL, Inc. went through a major restructuring and reduction in force. Aff. Chepalonis at ¶ 2. As a part of the restructuring, the defendant decided to eliminate tractor and trailer mechanics on the third shift. All three third shift mechanic positions were eliminated. Def. Ex. C, Aff. Chepalonis, at ¶ 3–6; Pl. Dep. at 44. Therefore, the defendant's proposed non-discriminatory reason for switching the plaintiff to the second shift is as follows: Due to the restructuring of the workforce no more trailer mechanics were to be working on the third shift due to business reasons.

It is the plaintiff's burden to proffer evidence that the defendant's reason is merely pretextual. In support of his position, the plaintiff claims that Paul Gossard, vice-president of fleet maintenance for the defendant, threatened plaintiff with the loss of his job if he continued making claims of sexual harassment. In support of this claim, the plaintiff cites his own affidavit. In a sworn affidavit, Plaintiff Fredrick Collins states: "Defendant's stated reasons for termination based upon company policy are pretext because Paul Gossard threatened me with termination when I met with him." Pl.Ex. B., Collins Aff. Although, it is not entirely clear, reading this statement in the light most favor-

---

**3.** The date on which the plaintiff was notified that he would be moved to the second shift is not clear from the record. Plaintiff asserts in his brief, however, that he complained to Gossard about the harassment on April 12, 2000 and he was told of the change in his shift on April 19, 2000. Plaintiff does not cite the record for the date of notification of shift change. Defendant in its reply brief, however, does not contest the accuracy of this date. Moreover, in his deposition, plaintiff initially testified that he was notified in May of the change. Pl. Dep. at 35. Defense counsel then asked him if it could have actually been in April, and plaintiff replied that it could have been April. *Id.*

able to the plaintiff, as we must, we can interpret this sentence to mean that when the plaintiff spoke with Gossard regarding the harassment, Gossard told him to stop complaining or he would be fired. A day or two after speaking with Gossard, the plaintiff delivered a letter to the Human Relations Department complaining of the harassment. Pl. Dep. at 45. A few days after that, the plaintiff was told of his being moved to the second shift.[4] It appears that a genuine issue of material fact is present.

Defendant argues that we should disregard the plaintiff's affidavit. At his deposition, the plaintiff never mentioned being threatened by Gossard, although he did testify about the meeting he had with him. Therefore, defendant contends that we should disregard the affidavit. We are unconvinced by the defendant's argument. During the deposition, no direct question was placed to the plaintiff regarding the alleged threats. Moreover, the plaintiff discusses the threats in the complaint. See Compl. ¶ 49–50. Because they were in the complaint, the defendant was aware of the allegations, and certainly could have asked the plaintiff a direct question about the threats.[5]

We find that this evidence, although scant, is sufficient to rebut the defendant's proposed legitimate non-discriminatory reason and create a genuine issue of mate-rial fact regarding the reason for the plaintiff being transferred to the second shift.

Moreover, in support of its position, the defendant provides evidence that the decision to eliminate the third shift trailer mechanics was made due to concerns over supervision and productivity. Def. Ex. C, Chepalonis Aff. ¶ 5. Plaintiff has submitted evidence to rebut that there were productivity issues. For example he has submitted several productivity and efficiency reports that demonstrate that the plaintiff's productivity was not bad. Pl.Ex. F. In addition, plaintiff has submitted evidence that at least one employee continued to work on the third shift for approximately two months after the plaintiff was switched to second shift. Pl.Ex. D, Carberry Aff.

All of this evidence, when taken together is sufficient to establish a genuine issue of material fact with regard to whether the defendant's non-discriminatory reason for the decision to place plaintiff on the second shift was merely a pretext and that the real reason was unlawful discrimination. Accordingly, it is inappropriate to grant summary judgment to the defendant on the complaint's retaliation claims.

**Conclusion**

In conclusion, we find that judgment should be granted to the defendant with regard to the plaintiff's claims for sexual discrimination and sexual harassment/hostile work environment because the plaintiff

---

**4.** See footnote 3 regarding the date on which plaintiff was notified of the shift switch.

**5.** Defendant asked plaintiff at the deposition generally what evidence he had to support his contention that his move to second shift was retaliation. Defendant claims that plaintiff did not at that point mention the threats, but said it was merely a "feeling" or "belief." The deposition actually reads as follows: "Q: Do you have any facts or evidence on which you're relying for your allegation that your shift was changed because of your complaints about Mr. Clark? A. Just coincidence and the one ... e-mail that says, Let's see if they leave or call my bluff." Pl. Dep. at 82. We find that this answer is not necessarily contradictory to the plaintiff's affidavit. The question is phrased in such a way as to indicate that tangible evidence is sought. The plaintiff, untrained in the law, may not have known when asked the question, that his own testimony regarding the threats would be regarded as legal evidence of the claim against the defendant. The response may be the proper subject of cross-examination, but not the granting of summary judgment, especially as we must view all the evidence in the light most favorable to the plaintiff.

has proven insufficient evidence to establish that he was discriminated against "because of sex." The defendant's motion for summary judgment with regard to retaliation, however, will not be granted. The plaintiff has presented sufficient evidence to establish a *prima facie* case of retaliation, and if believed, to allow a jury to conclude that the defendant's stated non-discriminatory reason for the adverse employment action was merely pretext for unlawful retaliation. An appropriate order follows.

## ORDER

**AND NOW**, to wit, this 19th day of March 2003, the defendant's motion for summary judgment (Doc. 17) is **GRANTED** in part and **DENIED** in part. The motion is granted with respect to Counts One and Four and judgment is **GRANTED** to the defendant on those Counts. The motion is denied with respect to Counts Two and Five [6] regarding retaliation.

6. What we refer to as Count Five is labeled in the complaint as Count Six.