NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 03-2628

Harry Kay,

Appellant

v.

Independence Blue Cross,

Appellee

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civil Action No. 01-cv-00676)
District Judge: Hon. Berle M. Schiller

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 8, 2005

Before: McKEE, NYGAARD and RENDELL, Circuit Judges.

(Filed: July 19, 2005)

OPINION

McKEE, Circuit Judge.

Harry Kay appeals the district court's grant of summary judgment in favor of his

employer, Independence Blue Cross ("IBC"), in the action Kay brought alleging sexual

discrimination under Title VII of the Civil Rights Act of 11964, 42 U.S.C. §§ 2000 et seq.

("Title VII"). Although our analysis differs from the approach taken by the district court,

we will affirm the grant of summary judgment to IBC.[1]

## I..

Since we write primarily for the parties, it is not necessary to recite the facts of this case except insofar as may be helpful to our brief discussion.[2] Kay presents two arguments. First, Kay argues that the district court erred when it found no evidence of severe or pervasive harassment. Second, Kay argues that the district court erred when it concluded that IBC was not negligent in responding to Kay's complaints of harassment and Kay had therefore failed to establish respondeat superior liability.

Title VII prohibits an employer from harassing an employee "because of [the employee's] sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998). However, Title VII does not prohibit discrimination based on sexual orientation. *Bibby v. Phila. Coca Cola Bottling Company*, 260 F.3d 257, 261 (3d Cir. 2001) (internal citations omitted). Nevertheless, we have suggested that evidence of harassment may constitute illegal discrimination under Title VII if a plaintiff can prove that the harasser's conduct was motivated by a belief that the victim did not conform to gender stereotypes. *Id*. at

---

[1] We may affirm the decision of the district court for any reason that appears proper on the record, even if the district court did not base its decision on that rationale. *See United States v. Miller,* 224 F.3d 247, 248 (3d Cir.2000).

[2] Our review of the district court's grant of summary judgment is plenary. *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001). Summary judgment is appropriate when the record discloses no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). We have jurisdiction under 28 U.S.C. § 1291.

262-63 (internal citations omitted). The theory is based upon the analysis in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). There, a plurality of the Court stated that "[i]n the specific context of sex stereotyping, an employer who acts on the basis or a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Id*. at 250.

Relying on *Price Waterhouse*, the court in *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864 (9th Cir. 2001), held that a plaintiff had been impermissibly discriminated against on the basis of gender where the plaintiff claimed he was harassed because he was effeminate and failed to conform to male stereotypes. There, the court found that the harassment at issue was closely linked to gender because the plaintiff's harassers discriminated against him for being "too feminine." Similarly, Kay argues that the harassing conduct of his coworkers satisfies the elements of Title VII because it was based upon an alleged perception that he was too feminine.

Indeed, two of the incidents that Kay endured at IBC arguably implicated gender stereotypes. The photocopied flyer for a gay phone line that was left in Kay's mailbox contained a typed line of text that read: "A real man in the corporate world would not come to work with an earring in his ear. But I guess you will never be a 'real man'!!!!!!" In addition, one of Kay's co-workers, Donna Bennett, referring to another employee who was replacing a water bottle on a cooler, commented, in front of Kay, "I'm glad that there's a real man on the floor."

To state a claim for gender harassment under Title VII based on conduct by co-workers, Kay must establish: (1) that he suffered from intentional discrimination because of his gender; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected him; (4) that the discrimination would have detrimentally affected a reasonable person of the same gender in that position; and (5) the existence of respondeat superior liability. *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001).

Assuming *arguendo* that gender stereotyping can constitute sex discrimination under Title VII, we must still consider "any stereotypical statements within the context of all of the evidence of harassment, and then determine whether the evidence as a whole creates a reasonable inference that the plaintiff was discriminated against because of his sex." *Spearman v. Ford Motor Company*, 231 F.3d 1080, 1085 (7th Cir. 2000). Thus, these two incidents must be viewed in the broader context of the harassment alleged by Kay. When viewed in this context, this record clearly demonstrates that the harassment was based on perceived sexual orientation, rather than gender.

The record contains multiple references to Kay's sexual orientation. In his deposition testimony, when asked why he thought his co-worker (Foley) had mimicked a limp wrist, Kay responded, "Well, maybe it was because [Foley] knows that [Butts] is gay. And anyone that hangs out with the gay men must be gay." In addition, Kay stated several times during administrative proceedings related to charges he filed with the

4

Pennsylvania Human Relations Commission, that he was harassed because of his sexual orientation. He also told the representative responsible for ensuring his long-term disability benefits that he was harassed based on sexual orientation.

That allegation of bias based upon his perceived sexual orientation is consistent with the record here. For example, Kay reports overhearing a co-worker state "Did you see that fag that moved up on the floor yesterday?" He also reports being told: "You are just so gay," by the same co-worker who had just stated that she was happy that there were "real men" on the floor. In addition, Kay complained of a petition stating: "If you want this queer off the floor, sign here;" a note stating: "Stop staring at me, you faggot;" and a flyer for a gay sex phoneline which included the phrase: "GAY! GAY! GAY!" Lastly, the voice messages that Kay received included the terms, "faggot," "fem," and "ass wipe."

Moreover, Donna Bennett's reference to a "real man" was accompanied by: "You are just so gay." Similarly, the anonymous statement: "A real man in the corporate world would not come to work with an earring in his ear. But I guess you will never be a 'real man'!!!!!!;" was typed at the bottom of a flier for a gay sex phone line. Thus, we think it clear that Kay's claim is based upon discrimination that is motivated by perceived sexual orientation. Furthermore, even assuming *arguendo* that the "real man" flier, and Bennett's crude comments can be interpreted as gender-stereotyping and that we would

hold such discrimination actionable.[3] they would then only constitute "the 'sporadic use of abusive language, gender-related jokes." that fall short of the threshold needed for gender-stereotyping liability under Title VII. *See  Trigg v. New York City Transit Authority*, 2001 WL 868336 at *6 (E.D.N.Y. 2001) (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 175 (1992), quoted in *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).  Thus, the only reasonable reading of this record compels the conclusion that the reprehensible conduct Kay alleges was motivated by sexual orientation bias rather than gender stereotyping. Accordingly, the district court correctly granted summary judgment to IBC.[4]

---

[3] *See Bibby*, 260 F.3d at 263 n.5 (discussing the gender stereotype theory of liability as upheld in *Doe v. City of Belleville,* 119 F.3d 563 (7th Cir. 1995)).

[4] Although we affirm the grant of summary judgment, we emphasize that our holding should not be interpreted to minimize the seriousness of Kay's allegations.  As we stated above, the conduct kay alleges is nothing short of reprehensible and we would hope that no employer would knowingly tolerate the work environment that Kay claims he had to endure.  However, our reach is limited by the scope of Title VII.  Absent amendment by Congress, Title VII does not include a cause of action for discrimination based upon sexual preference. We have previously noted that "Congress has repeatedly rejected legislation that would have extended title VII to cover sexual orientation." *Bibby*, 260 F.3d at 261.

RENDELL, Circuit Judge.  (Concurring Opinion)

Given the fact that the District Court concluded that gender stereotyping did occur in this case, I would not have seized upon a failure to prove gender stereotyping as our reasoning in this case.  The line between discrimination based upon gender stereotyping and that based upon sexual orientation is difficult to draw and in this case some of the complained of conduct arguably fits within both rubrics.  Therefore, I would have resolved this case based upon Kay's failure to prove that his co-workers' discriminatory acts were "pervasive and regular" under the strict standard set forth by the Supreme Court in Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).  Here, the co-workers' discriminatory conduct was sporadic at best.

_____