**Brian D. PROWEL, Appellant,**

v.

**WISE BUSINESS FORMS, INC., Appellee.**

No. 07–3997.

United States Court of Appeals, Third Circuit.

Argued Oct. 1, 2008.

Filed: Aug. 28, 2009.

Katie R. Eyer [Argued], Salmanson Goldshaw, Corey S. Davis, Equality Advocates Pennsylvania, Philadelphia, PA, Timothy P. O'Brien, Pittsburgh, PA, for Appellant.

Kurt A. Miller [Argued], Thorp, Reed & Armstrong, Pittsburgh, PA, for Appellee.

Susan Frietsche, Tatyana Margolin, Women's Law Project, Pittsburgh, PA, for Amicus Appellant.

Before: FISHER, CHAGARES and HARDIMAN, Circuit Judges.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

Brian Prowel appeals the District Court's summary judgment in favor of his former employer, Wise Business Forms, Inc. Prowel sued under Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act, alleging that Wise harassed and retaliated against him because of sex and religion. The principal issue on appeal is whether Prowel has marshaled sufficient facts for his claim of "gender stereotyping" discrimination to be submitted to a jury. We also consider whether the District Court erred in granting summary judgment to Wise on Prowel's religious discrimination claim.

### I.

We exercise plenary review over the District Court's grant of summary judgment and we apply the same standard as the District Court. *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In making this determination, we 'must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Norfolk*, 512 F.3d at 91 (quoting *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir.2001)). Because summary judgment was entered against Prowel, we view the record in the light most favorable to him.

### II.

Prowel began working for Wise in July 1991. A producer and distributor of business forms, Wise employed approximately 145 workers at its facility in Butler, Pennsylvania. From 1997 until his termination, Prowel operated a machine called a nale encoder, which encodes numbers and organizes business forms. On December 13, 2004, after 13 years with the company, Wise informed Prowel that it was laying him off for lack of work.

### A.

Prowel's most substantial claim is that Wise harassed and retaliated against him because of sex. The theory of sex discrimination Prowel advances is known as a "gender stereotyping" claim, which was

first recognized by the Supreme Court as a viable cause of action in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

Prowel identifies himself as an effeminate man and believes that his mannerisms caused him not to "fit in" with the other men at Wise. Prowel described the "genuine stereotypical male" at the plant as follows:

> [B]lue jeans, t-shirt, blue collar worker, very rough around the edges. Most of the guys there hunted. Most of the guys there fished. If they drank, they drank beer, they didn't drink gin and tonic. Just you know, all into football, sports, all that kind of stuff, everything I wasn't.

In stark contrast to the other men at Wise, Prowel testified that he had a high voice and did not curse; was very well-groomed; wore what others would consider dressy clothes; was neat; filed his nails instead of ripping them off with a utility knife; crossed his legs and had a tendency to shake his foot "the way a woman would sit"; walked and carried himself in an effeminate manner; drove a clean car; had a rainbow decal on the trunk of his car; talked about things like art, music, interior design, and decor; and pushed the buttons on the nale encoder with "pizzazz."

Some of Prowel's co-workers reacted negatively to his demeanor and appearance. During the last two years of his employment at Wise, a female co-worker frequently called Prowel "Princess." In a similar vein, co-workers made comments such as: "Did you see what Rosebud was wearing?"; "Did you see Rosebud sitting there with his legs crossed, filing his nails?"; and "Look at the way he walks."[1]

Prowel also testified that he is homosexual. At some point prior to November 1997, Prowel was "outed" at work when a newspaper clipping of a "man-seeking-man" ad was left at his workstation with a note that read: "Why don't you give him a call, big boy." Prowel reported the incident to two management-level personnel and asked that something be done. The culprit was never identified, however.

After Prowel was outed, some of his co-workers began causing problems for him, subjecting him to verbal and written attacks during the last seven years of his tenure at Wise. In addition to the nicknames "Princess" and "Rosebud," a female co-worker called him "fag" and said: "Listen, faggot, I don't have to put up with this from you." Prowel reported this to his shift supervisor but received no response.

At some point during the last two years of Prowel's employment, a pink, light-up, feather tiara with a package of lubricant jelly was left on his nale encoder. The items were removed after Prowel complained to Henry Nolan, the shift supervisor at that time. On March 24, 2004, as Prowel entered the plant, he overheard a co-worker state: "I hate him. They should shoot all the fags." Prowel reported this remark to Nolan, who said he would look into it. Prowel also overheard conversations between co-workers, one of whom was a supervisor, who disapproved of how he lived his life. Finally, messages began to appear on the wall of the men's

---

1. In its brief, Wise notes that Prowel's affidavit included incidents of harassment that were not mentioned during Prowel's deposition. Wise argued to the District Court that these incidents should not be considered because they contradicted Prowel's prior sworn testimony in violation of *Hackman v. Valley Fair,* 932 F.2d 239, 241 (3d Cir.1991). Although the District Court disagreed with Wise's argument in this regard, it nevertheless held that these facts did not create a genuine issue of material fact on Prowel's gender stereotyping claim.

bathroom, claiming Prowel had AIDS and engaged in sexual relations with male co-workers. After Prowel complained, the company repainted the restroom.

## B.

In addition to the harassment Prowel allegedly experienced because of his sex, he also claims that he was discriminated against because of religion. Specifically, Prowel argues that his conduct did not conform to the company's religious beliefs. When asked at his deposition what those religious beliefs were, Prowel responded: "a man should not lay with another man."

For a few months during the spring of 2004, Prowel found anonymous prayer notes on his work machine on a daily basis. Prowel also found messages indicating he was a sinner for the way he lived his life. Additionally, he found a note stating: "Rosebud will burn in hell." Prowel attributed these notes and comments to Michael Croyle, a Christian employee who refused to speak to Prowel. Moreover, Prowel testified in his deposition that nothing was left on his machine after Croyle left the company.

Another co-worker, Thomas Bowser, stated that he did not approve of how Prowel lived his life. Prowel testified that Bowser brought religious pamphlets to work that stated "the end is coming" and "have you come clean with your maker?"

## C.

Prowel alleges that his co-workers shunned him and his work environment became so stressful that he had to stop his car on the way to work to vomit. At some point in 2004, Prowel became increasingly dissatisfied with his work assignments and pay. Prowel believed he was asked to perform more varied tasks than other nale encoder operators, but was not compensated fairly for these extra tasks, even though work piled up on his nale encoder.

In April 2004, Prowel considered suing Wise and stated his intentions to four non-management personnel, asking them to testify on his behalf. Prowel allegedly told his colleagues that the lawsuit would be based on harassment for not "fitting in"; he did not say anything about being harassed because of his homosexuality. These four colleagues complained to management that Prowel was bothering them.

On May 6, 2004, General Manager Jeff Straub convened a meeting with Prowel and supervisors Nolan and John Hodak to discuss Prowel's concern that he was doing more work for less money than other nale encoder operators. Prowel's compensation and workload were discussed, but the parties did not reach agreement on those issues. Straub then asked Prowel if he had approached employees to testify for him in a lawsuit, and Prowel replied that he had not done so. Prowel has since conceded that he did approach other employees in this regard.

On December 13, 2004, Prowel was summoned to meet with his supervisors, who informed him that he was terminated effective immediately for lack of work.

## III.

After exhausting his administrative remedies before the Equal Employment Opportunity Commission, Prowel sued Wise in the United States District Court for the Western District of Pennsylvania, alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa. Cons.Stat. § 951, *et seq.* (PHRA). Prowel alleged harassment and wrongful termination because of sex and religion and concomitant retaliation. Following discovery, Wise moved for summary judg-

ment and the District Court granted the company's motion in its entirety. As relevant to this appeal,[2] the District Court held that Prowel's suit was merely a claim for sexual orientation discrimination—which is not cognizable under Title VII—that he repackaged as a gender stereotyping claim in an attempt to avoid summary judgment. Prowel's religious discrimination claim failed for the same reason. As for Prowel's retaliation claim, the District Court held that Prowel had a good faith belief that he had engaged in protected activity under Title VII, but that his belief was not objectively reasonable given that his complaint was actually based on sexual orientation discrimination. Prowel filed this timely appeal.[3]

## IV.

In evaluating Wise's motion for summary judgment, the District Court properly focused on our decision in *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257 (3d Cir.2001), wherein we stated: "Title VII does not prohibit discrimination based on sexual orientation. Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation." *Id.* at 261 (citations omitted). This does not mean, however, that a homosexual individual is barred from bringing a *sex discrimination* claim under Title VII, which plainly prohibits discrimination "because of sex." 42 U.S.C. § 2000e–2(a). As the District Court noted, "once a plaintiff shows that harassment is motivated by sex, it is no defense that it may also have been motivated by anti-gay animus." Dist. Ct. Op. at 6 (citing *Bibby*, 260 F.3d at 265). In sum, "[w]hatever the sexual orientation of a plaintiff bringing a same-sex sexual harassment claim, that plaintiff is required to demonstrate that the harassment was directed at him or her because of his or her sex." *Bibby*, 260 F.3d at 265.

Both Prowel and Wise rely heavily upon *Bibby*. Wise claims this appeal is indistinguishable from *Bibby* and therefore we should affirm its summary judgment for the same reason we affirmed summary judgment in *Bibby*. Prowel counters that reversal is required here because gender stereotyping was not at issue in *Bibby*. As we shall explain, *Bibby* does not dictate the result in this appeal. Because it guides our analysis, however, we shall review it in some detail.

John Bibby, a homosexual man, was a long-time employee of the Philadelphia Coca Cola Bottling Company. *Id.* at 259. The company terminated Bibby after he sought sick leave, but ultimately reinstated him. *Id.* After Bibby's reinstatement, he alleged that he was assaulted and harmed by co-workers and supervisors when he was subjected to crude remarks and derogatory sexual graffiti in the bathrooms. *Id.* at 260.

Bibby filed a complaint with the Philadelphia Commission on Human Relations (PCHR), alleging sexual orientation discrimination. *Id.* After the PCHR issued a right-to-sue letter, Bibby sued in federal court alleging, *inter alia*, sexual harassment in violation of Title VII. *Id.* The district court granted summary judgment for the company because Bibby was harassed not "because of sex," but rather because of his sexual orientation, which is not cognizable under Title VII. *Id.* at 260–61.

---

**2.** Prowel did not oppose Wise's motion for summary judgment with regard to his termination claims or his PHRA claims.

**3.** The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e–5(f)(3). We have jurisdiction pursuant to 28 U.S.C. § 1291.

On appeal, this Court affirmed, holding that Bibby presented insufficient evidence to support a claim of same-sex harassment under Title VII. Despite acknowledging that harassment based on sexual orientation has no place in a just society, we explained that Congress chose not to include sexual orientation harassment in Title VII. *Id.* at 261, 265. Nevertheless, we stated that employees may—consistent with the Supreme Court's decision in *Price Waterhouse*—raise a Title VII *gender stereotyping* claim, provided they can demonstrate that "the[ir] harasser was acting to punish [their] noncompliance with gender stereotypes." *Id.* at 264; *accord Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir.2006); *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 874 (9th Cir.2001); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir.1999). Because Bibby did not claim gender stereotyping, however, he could not prevail on that theory. We also concluded, in dicta, that even had we construed Bibby's claim to involve gender stereotyping, he did not marshal sufficient evidence to withstand summary judgment on that claim. *Bibby*, 260 F.3d at 264–65.

In light of the foregoing discussion, we disagree with both parties' arguments that *Bibby* dictates the outcome of this case. *Bibby* does not carry the day for Wise because in that case, the plaintiff failed to raise a gender stereotyping claim as Prowel has done here. Contrary to Prowel's argument, however, *Bibby* does not require that we reverse the District Court's summary judgment merely because we stated that a gender stereotyping claim is cognizable under Title VII; such has been the case since the Supreme Court's decision in *Price Waterhouse*. Instead, we must consider whether the record, when viewed in the light most favorable to Prowel, contains sufficient facts from which a reasonable jury could conclude that he was

harassed and/or retaliated against "because of sex."

Before turning to the record, however, we must revisit *Price Waterhouse*, which held that a woman who was denied a promotion because she failed to conform to gender stereotypes had a claim cognizable under Title VII as she was discriminated against "because of sex."

In *Price Waterhouse*, Ann Hopkins had been denied partnership in an accounting firm because she used profanity; was not charming; and did not walk, talk, or dress in a feminine manner. 490 U.S. at 235, 109 S.Ct. 1775. A plurality of the Supreme Court concluded that "[i]n the specific context of sex stereotyping, an employer who acts on the basis of a belief that a woman cannot be aggressive, or that she must not be, has acted on the basis of gender." *Id.* at 250, 109 S.Ct. 1775. The plurality also noted: "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group, for '[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'" *Id.* at 251, 109 S.Ct. 1775 (quoting *L.A. Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n. 13, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978)) (some internal quotations omitted). Thus, the Supreme Court held that Title VII prohibits discrimination against women for failing to conform to a traditionally feminine demeanor and appearance.

Like our decision in *Bibby*, the Supreme Court's decision in *Price Waterhouse* provides the applicable legal framework, but does not resolve this case. Unlike in *Price Waterhouse*—where Hopkins's sexual orientation was not at issue—here there is

no dispute that Prowel is homosexual. The difficult question, therefore, is whether the harassment he suffered at Wise was because of his homosexuality, his effeminacy, or both.

■ As this appeal demonstrates, the line between sexual orientation discrimination and discrimination "because of sex" can be difficult to draw. In granting summary judgment for Wise, the District Court found that Prowel's claim fell clearly on one side of the line, holding that Prowel's sex discrimination claim was an artfully-pleaded claim of sexual orientation discrimination. However, our analysis—viewing the facts and inferences in favor of Prowel—leads us to conclude that the record is ambiguous on this dispositive question. Accordingly, Prowel's gender stereotyping claim must be submitted to a jury.

Wise claims it laid off Prowel because the company decided to reduce the number of nale encoder operators from three to two. This claim is not without support in the record. After Prowel was laid off, no one was hired to operate the nale encoder during his shift. Moreover, market conditions caused Wise to lay off 44 employees at its Pennsylvania facility between 2001 and September 2006, and the company's workforce shrank from 212 in 2001 to 145 in 2008. General Manager Straub testified that in determining which nale encoder operator to lay off, he considered various factors, including customer service, productivity, cooperativeness, willingness to perform other tasks (the frequency with which employees complained about working on other machines), future advancement opportunities, and cost. According to Wise, Prowel was laid off because: comments on his daily production reports reflected an uncooperative and insubordinate attitude; he was the highest paid operator; he complained when asked to work on different machines; and he did not work to

the best of his ability when operating the other machines.

Prowel asserts that these reasons were pretextual and he was terminated because of his complaints to management about harassment and his discussions with co-workers regarding a potential lawsuit against the company. In this respect, the record indicates that Prowel's work compared favorably to the other two nale encoder operators. Specifically, Prowel worked on other equipment fifty-four times during the last half of 2004 while a co-worker did so just once; Prowel also ran more jobs and impressions per hour than that same co-worker; and Prowel's attendance was significantly better than the third nale encoder operator. Finally, although Wise laid off forty-four workers between 2001 and 2006, it laid off no one in 2003, only Prowel in 2004, and just two in 2005. Although Prowel is unaware what role his sexual orientation played in his termination, he alleges that he was harassed and retaliated against not because of the quality of his work, but rather because he failed to conform to gender stereotypes.

The record demonstrates that Prowel has adduced evidence of harassment based on gender stereotypes. He acknowledged that he has a high voice and walks in an effeminate manner. In contrast with the typical male at Wise, Prowel testified that he: did not curse and was very well-groomed; filed his nails instead of ripping them off with a utility knife; crossed his legs and had a tendency to shake his foot "the way a woman would sit." Prowel also discussed things like art, music, interior design, and decor, and pushed the buttons on his nale encoder with "pizzazz." Prowel's effeminate traits did not go unnoticed by his co-workers, who commented: "Did you see what Rosebud was wearing?"; "Did you see Rosebud sitting there with

his legs crossed, filing his nails?"; and "Look at the way he walks." Finally, a co-worker deposited a feathered, pink tiara at Prowel's workstation. When the aforementioned facts are considered in the light most favorable to Prowel, they constitute sufficient evidence of gender stereotyping harassment—namely, Prowel was harassed because he did not conform to Wise's vision of how a man should look, speak, and act—rather than harassment based solely on his sexual orientation.

To be sure, the District Court correctly noted that the record is replete with evidence of harassment motivated by Prowel's sexual orientation. Thus, it is possible that the harassment Prowel alleges was because of his sexual orientation, not his effeminacy. Nevertheless, this does not vitiate the possibility that Prowel was also harassed for his failure to conform to gender stereotypes. See 42 U.S.C. § 2000e–2(m) ("[A]n unlawful employment practice is established when the complaining party demonstrates that ... sex ... was a motivating factor for any employment practice, even though other factors also motivated the practice."). Because both scenarios are plausible, the case presents a question of fact for the jury and is not appropriate for summary judgment.

In support of the District Court's summary judgment, Wise argues persuasively that every case of sexual orientation discrimination cannot translate into a triable case of gender stereotyping discrimination, which would contradict Congress's decision not to make sexual orientation discrimination cognizable under Title VII. Nevertheless, Wise cannot persuasively argue that *because* Prowel is homosexual, he is precluded from bringing a gender stereotyping claim. There is no basis in the statuto-ry or case law to support the notion that an effeminate *heterosexual* man can bring a gender stereotyping claim while an effeminate *homosexual* man may not. As long as the employee—regardless of his or her sexual orientation—marshals sufficient evidence such that a reasonable jury could conclude that harassment or discrimination occurred "because of sex," the case is not appropriate for summary judgment. For the reasons we have articulated, Prowel has adduced sufficient evidence to submit this claim to a jury.[4]

## V.

■ Prowel also argues that the District Court erred when it granted Wise summary judgment on his claim of religious harassment. To survive summary judgment on this claim, Prowel must show: (1) intentional harassment because of religion, that (2) was severe or pervasive, and (3) detrimentally affected him, and (4) would detrimentally affect a reasonable person of the same religion in that position, and (5) the existence of respondeat superior liability. *Abramson,* 260 F.3d at 276–77.

■ Our review of the record leads to the conclusion that Prowel cannot satisfy the first essential element of his cause of action. Prowel admits that no one at Wise harassed him based on *his* religious beliefs. Rather, Prowel contends that he was harassed for failing to conform to *Wise's* religious beliefs. Title VII seeks to protect employees not only from discrimination against them on the basis of their religious beliefs, but also from forced religious conformity. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Abramson,* 260 F.3d at 277. Nevertheless, when asked to iden-

---

4. The District Court correctly reasoned that Prowel's retaliation claim was derivative of his gender stereotyping claim. Since Prowel is entitled to a jury trial on that claim, it follows *a fortiori* that Prowel is entitled to put his retaliation claim before the jury as well.

tify which of Wise's beliefs to which he failed to conform, Prowel could identify just one: "that a man should not lay with another man." Likewise, in response to Wise's statement of undisputed material facts, Prowel admitted: "the only way in which [he] failed to conform to his co-workers' religious beliefs was by virtue of his status as a gay man." Finally, over a month after Wise moved for summary judgment, Prowel averred that he suffered religious harassment because: "I am a gay male, which status several of my co-workers considered to be contrary to being a good Christian."

Prowel's identification of this single "religious" belief leads ineluctably to the conclusion that he was harassed not "because of religion," but because of his sexual orientation. Given Congress's repeated rejection of legislation that would have extended Title VII to cover sexual orientation, *see Bibby*, 260 F.3d at 261, we cannot accept Prowel's *de facto* invitation to hold that he was discriminated against "because of religion" merely by virtue of his homosexuality.

In support of his argument that the District Court should not have granted Wise summary judgment on his religious harassment claim, Prowel relies upon *Erdmann v. Tranquility Inc.*, 155 F.Supp.2d 1152 (N.D.Cal.2001). In *Erdmann*, a homosexual employee claimed religious discrimination because his boss insisted that he become heterosexual. *Id.* at 1156. Wholly apart from the fact that it is not binding precedent, *Erdmann* cannot bear the weight Prowel places upon it. Unlike Prowel, Erdmann did not claim Title VII religious harassment based exclusively upon his homosexual status. Rather, the employer in that case insisted that Erdmann convert to the employer's faith and lead the company's daily prayer service.

*Id.* at 1158. Prowel has not cited any facts supporting analogous religious coercion.

In sum, the same principle that requires Prowel's gender stereotyping claim to be submitted to the jury requires that his religious harassment claim fail at this stage. As explained above, Prowel's gender stereotyping claim is not limited to, or coextensive with, a claim of sexual orientation harassment. Accordingly, the jury will have to determine the basis of the harassment. By contrast, Prowel's religious harassment claim is based entirely upon his status as a gay man. Because Prowel's claim was a repackaged claim for sexual orientation discrimination—which is not cognizable under Title VII—we hold that the District Court did not err in granting Wise summary judgment on that claim.

VI.

For the foregoing reasons, we will vacate the judgment of the District Court as to Prowel's sexual harassment and corresponding retaliation claim, we will affirm the judgment of the District Court as to Prowel's religious harassment and corresponding retaliation claim, and will remand for further proceedings consistent with this opinion.