WILLIAM PRYOR, Circuit Judge,
concurring:
I concur in the majority opinion, but I write separately to explain the error of the argument of the Equal Employment Opportunity Commission and the dissent that a person who experiences discrimination because of sexual orientation necessarily experiences discrimination for deviating from gender stereotypes. Although a person who experiences the former will sometimes also experience the latter, the two concepts are legally distinct. And the insistence otherwise by the Commission and the dissent relies on false stereotypes of gay individuals. I also write separately to explain that the dissent would create a new form of relief based on status that runs counter to binding precedent and would undermine the relationship between the doctrine of gender nonconformity and the enumerated classes protected by Title VII.
The majority opinion correctly holds that a claim of discrimination for failure to conform to a gender stereotype is not “just another way to claim discrimination based on sexual orientation.” Maj. Op. at 1252. Like any other woman, Evans can state a claim that she experienced, for example, discrimination for wearing a “male haircut” if she includes enough factual allegations. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); Glenn v. Brumby, 663 F.3d 1312, 1314, 1320-21 (11th Cir. 2011). But just as a woman cannot recover under Title VII when she is fired because of her heterosexuality, neither can a gay woman sue for discrimination based on her sexual orientation. Deviation from a particular gender stereotype may correlate disproportionately with a particular sexual orientation, and plaintiffs who allege discrimination on the basis of gender nonconformity will often also have experienced discrimination because of sexual orientation. See, e.g., Prowel v. Wise Bus. Forms, Inc., 579 F.3d 285, 287, 289, 291 (3d Cir. 2009) (Hardiman, J.) (holding that Title VII protects a gay man for deviating from gender stereotypes but not for his sexual orientation). But under Title VII, we ask only whether the individual experienced discrimination for deviating from a gender stereotype. Cf. id. at 291.
The unsurprising reality that some individuals who have experienced discrimination because of sexual orientation will also have experienced discrimination because of gender nonconformity by no means establishes that every gay individual who experiences discrimination because of sexual orientation has a “triable case of gender stereotyping discrimination.” Id. at 292. The Commission and the dissent would have us hold that sexual orientation discrimination always constitutes discrimination for gender nonconformity. They contend, for example, that all gay individuals necessarily engage in the same behavior. E.g., Amicus Br. at 14 (“[A]ll homosexuals, by definition, fail to conform to traditional gender norms in their sexual practices.” (quoting Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 764 (6th Cir. 2006))) (alteration in original) (emphasis added); Dissent *1259 ing Op. at 1266-67 (same); Amicus Br. at 15 (arguing that the stereotype exists that “‘real’ men should date women, and not other men” (quoting Centola v. Potter, 183 F.Supp.2d 403, 410 (D. Mass. 2002))) (emphasis added). But that argument stereotypes all gay individuals in the same way that the Commission and the dissent allege that the Hospital stereotyped Evans.
By assuming that all gay individuals behave the same way or have the same interests, the Commission and the dissent disregard the diversity of experiences of gay individuals. Some gay individuals adopt what various commentators have referred to as the gay “social identity” but experience a variety of sexual desires. E.g., E.J. Graff, What’s Wrong with Choosing to Be Gay?, The Nation (Feb. 3, 2014) (recounting experiences of gay individuals); see also Brandon Ambrosirio, I Wasn’t Born This Way. I Choose to Be Gay, The New Republic (Jan. 28, 2014) (arguing against the belief that “none of us has any control over our sexual identities”). Like some heterosexuals, some gay individuals may choose not to marry or date at all or may choose a celibate lifestyle. And other gay individuals choose to enter mixed-orientation marriages. See, e.g., Brief of Amici Curiae Same-Sex Attracted Men and Then-Wives in Support of Respondents and Affirmance at 2-3, Obergefell v. Hodges, - U.S. -, 135 S.Ct. 2584, 192 L.Ed.2d 609 (2015) (Nos. 14-556, 14-562, 14-571, 14-574). A gay individual may establish with enough factual evidence that she experienced sex discrimination because her behavior deviated from a gender stereotype held by an employer, but our review of that claim would rest on behavior alone.
The dissent asserts that discrimination on the basis of sexual orientation “clearly violates Title VII,” Dissenting Op. at 1261, yet as the majority opinion explains, every circuit to have reviewed this issue, including our own, has arrived at the opposite conclusion, Maj. Op. at 1256-57. The dissent compares gay females to heterosexual males, Dissenting Op. at 1264-65 n.8, but it does not follow that an employer who treats one differently from the other does so “because of ... sex” instead of “because of sexual orientation.” The dissent also crafts a new, status-based class of protection that betrays a misreading of Price Waterhouse and Glenn and would undercut the relationship between the doctrine of gender nonconformity and the classes enumerated in Title VII.
The dissent misreads our precedent by framing the pertinent question in an appeal involving the doctrine of gender nonconformity as whether an employee’s status deviated from the ideal held by an employer as to what a woman “should be.” Dissenting Op. at 1263-64. Not shy about this invention, the dissent repeats it on nearly every page. Id. at 1261, 1262-63, 1264-67, 1268-72, 1273. But Price Water-house and Glenn concerned claims that an employee’s behavior, not status alone, deviated from a gender stereotype held by an employer.
The dissent derives much of its analytic framework from legal commentary, Dissenting Op. at 1262, but even that commentary accepts that Price Waterhouse concerned behavior, not status, and that current doctrine does not protect on the basis of status alone. Zachary R. Herz, Note, Price’s Progress: Sex Stereotyping and Its Potential for Antidiscrimination Law, 124 Yale L.J. 396, 406-07, 433 (2014) (stating that the stereotype the plaintiff in Price Waterhouse deviated from was not “behaving as a woman ‘should’ ” and that the “basic problem” today is that “employers are evaluating employees ... according to discriminatory ideas about how men and women should behave” (emphases added)); id. at 432 (acknowledging that “the *1260 current regime ... protects stereotypically ‘gay’ conduct without protecting LGBT status” (emphases added)). The only possible “status” in Price Waterhouse was the employee’s status as an “aggressive” woman. Price Waterhouse v. Hopkins, 490 U.S. 228, 250, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). But it is overbroad to say, as the dissent does, that Price Waterhouse asked about “status” in general when the decision clearly pertained to behavior.
The dissent also asserts that we provided Glenn relief “solely for being transsexual,” which the dissent proclaims deviated from what the employer thought Glenn “should be,” Dissenting Op. at 1265 (emphasis added), but we did not afford relief based on status alone. Instead, Glenn’s claim was successful because Glenn was fired after choosing to “beg[i]n to take' steps to transition.” Glenn “presentfed]” and “dressed as a woman” at work and notified the supervisor that Glenn intended to continue this behavior. Because Glenn “was born a biological male,” Glenn’s employer believed these choices were “unsettling,” “unnatural,” and “not appropriate.” Glenn, 663 F.3d at 1314, 1320-21. Title VII would have protected any biological male under those facts, not because of status, but because of behavior.
The dissent’s revision of the doctrine of gender nonconformity from a behavior-based inquiry into a status-based one does more than misread precedent; it also does violence to the relationship bfetween the doctrine and the enumerated classes of Title VII. The dissent would have us hold that “discrimination because an employee is gay violates Title VII[]” automatically under the doctrine. Dissenting Op. at 1264. But Price Waterhouse is clear that gender nonconformity does not “inevitably” lead to protection. 490 U.S. at 251, 109 S.Ct. 1775. The doctrine of gender nonconformity is not an independent vehicle for relief; it is instead a proxy a plaintiff uses to help support her argument that an employer discriminated on the basis of the enumerated sex category by holding males and females to different standards of behavior.
Because a claim of gender nonconformity is a behavior-based claim, not a status-based claim, a plaintiff still “must show that the employer actually relied on her gender in making its decision.” Id. That is, the employer must additionally establish that discrimination occurred on the basis of an enumerated class in Title VII. Remarks based on gender nonconformity are only “evidence that gender played a part” in the employer’s decision and are not always determinative. Id. For example, under Title VII, an employee could fire a male who wore a dress to work — even if that violated the employer’s gender stereotypes — if the reason for the firing was that all employees were required to wear a uniform that included pants. See id. at 252, 109 S.Ct. 1775. The doctrine of gender nonconformity is, and always has been, behavior based. Status-based protections must stem from a separate doctrine or directly from the text of Title VII. The dissent’s contrary view would undermine the evidentiary approach established by Price Waterhouse and the relationship of that doctrine to the text of Title VII.
The willingness to accept that Price Wa-terhouse and Glenn deal only with behaviors that deviate from gender stereotypes does not put one “at war with Glenn.” Dissenting Op. at 1265. Instead, it acknowledges that the doctrine of gender nonconformity is not and cannot be an independent vehicle for relief because the only status-based classes that provide relief are those enumerated within Title VII. We review claims of gender nonconformity the same way in all appeals regardless of a plaintiffs sexual orientation. Any correlation that might exist between a particular *1261 sexual orientation and deviation from a particular gender stereotype does not overcome this settled rule.
Because Congress has not made sexual orientation a protected class, the appropriate venue for pressing the argument raised by the Commission and the dissent is before Congress, not this Court. And for decades, members of Congress have introduced bills for that purpose. See, e.g., Equality Act, H.R. 3185, 114th Cong. (2015); Employment Non-Discrimination Act, S. 815, 113th Cong. (2013), S. 811, 112th Cong. (2011), S. 1584, 111th Cong. (2009), H.R. 3685, 110th Cong. (2007), H.R. 3285, 108th Cong. (2003), S. 1284, 107th Cong. (2002), H.R. 2355, 106th Cong. (1999), H.R. 1858, 105th Cong. (1997), S. 2056, 104th Cong. (1996), H.R. 4636, 103d Cong. (1994); Civil Rights Act, H.R. 431, 103d Cong. (1993); Civil Rights Amendments Act, H.R. 423, 103d Cong. (1993), S. 574, 102d Cong. (1991); S. 430, 98th. Cong. (1983); S. 1708, 97th Cong. (1981); S. 2081, 96th Cong. (1979). Contrary to the dissent’s assertions, Dissenting Op. at 1272, we cite this pattern of legislation not because it does or can suggest legislative intent but because it illustrates that Congress is the appropriate branch in which to raise the arguments raised by the dissent. The dissent’s disagreement boils down to incredulity that “[i]t cannot possibly be the case that” the combination of the text of Title VII and Price Waterhouse leave some individuals unprotected from discrimination. Dissenting Op. at 1267. But as a Court, “[o]ur province is to decide what the law is, not to declare what it should be.... If the law is wrong, it ought to be changed; but the power for that is not with us.” Minor v. Happersett, 88 U.S. 162, 178, 21 Wall. 162, 22 L.Ed. 627 (1874).