NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2026
_____

RENE FLORES,

Appellant

v.

CARL C. DANBERG; MIKE DELOY; G. R. JOHNSON, Warden; LINDA
VALENTINO; DELAWARE DEPARTMENT OF CORRECTIONS

_____

Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-13-cv-0075)
District Judge: Honorable Sue L. Robinson
_____

Argued Sept. 15, 2016

Before: CHAGARES, GREENAWAY, JR. and RESTREPO, *Circuit Judges*

(Filed: August 24, 2017)

Stephen A. Hampton, Esquire [ARGUED]
Grady & Hampton
6 North Bradford Street
Dover, DE 19904

Counsel for Appellant

Ryan P. Connell, Esquire [ARGUED]
Delaware Department of Justice
820 North French Street
Carvel Office Building, 6th Floor
Wilmington, DE 19801

Devera B. Scott, Esquire
Office of Attorney General of Delaware
102 West Water Street
Dover, DE 19904

Counsel for Appellees

_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*

Appellant, Rene Flores, alleges employment discrimination and retaliation on the bases that he was denied a promotion to captain by the Delaware Department of Correction ("DOC") based on his race and national origin and that appellees thereafter fired him in retaliation for his complaints about the alleged discrimination.[1] Flores

_____

[*] This disposition is not an Opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] Flores' Amended Complaint alleges claims of discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as well as 42 U.S.C. §§ 1981 and 1983. Having

appeals from the Memorandum Opinion and Order of the District Court granting appellees' motions for summary judgment, *see Flores v. Danberg*, 84 F. Supp.3d 340 (D. Del. 2015). For the reasons which follow, we affirm.

# I.[2]

Flores testified that in 1996, while he was a correctional officer for the DOC, he interviewed for and was promoted to corporal. In 2001, he applied for and received a promotion to sergeant, and shortly thereafter, Flores interviewed for and was promoted to lieutenant.[3] Flores subsequently applied for a promotion to staff lieutenant, but another candidate was selected.

Sometime prior to 2009, Flores again interviewed for a vacant staff lieutenant position. Although he was not selected for this position, he filed a grievance challenging the selection process, and appellee former DOC Bureau Chief Mike DeLoy granted relief. Flores was therefore promoted to an open staff lieutenant position with back pay.

In 2010, about a year after he was promoted to staff lieutenant, Flores applied for a vacant captain position. He was not selected, and he filed a grievance challenging the

---

concluded that summary judgment on these federal claims was appropriate, the District Court declined to exercise supplemental jurisdiction over Flores' ancillary state causes of action related to the Delaware Whistleblowers' Protection Act, *see* 19 Del. C. § 1703, and tortious interference with his employment contract, and Flores did not appeal the District Court's decision with regard to his state claims.

[2] We write exclusively for the parties and therefore set forth only those facts that are necessary to our disposition.

[3] When Flores was promoted during his career, he often was transferred to different facilities within the DOC.

selection process, which grievance was denied by former Deputy Commissioner Thomas Carroll.

In late 2010 or early 2011, another captain position became vacant, and Flores submitted an application and interviewed with a selection panel. The selection panel was made up of three members: Jeanette Christian, a Human Resources representative; Ernest McBroom, a lieutenant who served as a corrections emergency response team (CERT) training coordinator; and, appellee former Deputy Warden Linda Valentino.

Following the interviewing process, the panel unanimously agreed on the top two candidates, and Flores was not one of them. Further, the panel felt that the chosen candidate was clearly the best choice, that his answers during the interview were thoughtful and well presented, and in fact, among the best interviews in the panel's experience.

In April 2011, Valentino, the Panel Chairperson, informed Flores that he was not selected for the position. She suggested to Flores that he had stumbled on interview questions, and Flores responded that he disagreed with that characterization. Shortly thereafter, Flores filed a grievance, and that grievance was denied by DeLoy, who noted, among other things, the high quality of the selection panel. Flores then filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") based on this last promotion denial.

Around the same time that Flores had been informed by Valentino that he was not selected for the vacant captain position, on April 8, 2011 appellee G.R. Johnson, Warden

4

of Sussex Correctional Institution ("Sussex"), received an external complaint from Ryan Hobbs. Hobbs complained that Flores had illegally accessed Hobbs' criminal history record through the Delaware Criminal Justice Information System ("DELJIS") and had used this information to threaten him because Hobbs had been dating Flores' daughter. Consequently, investigations by DOC internal affairs ("IA"), as well as DELJIS security, were commenced.

An investigating officer reported that Flores allegedly violated DELJIS Directive One: Dissemination of criminal record history and motor vehicle information. The investigation, which included review of the DELJIS summary log, revealed that Flores accessed Hobbs' criminal history record through DELJIS on 16 occasions, and Flores accessed the criminal records of a total of at least 28 persons, most of these individuals searched on multiple occasions. In June 2011, following the DELJIS security investigation, the DELJIS Executive Committee directed Flores to undergo retraining and to re-sign the DELJIS policy. Meanwhile, the DOC continued to conduct its IA investigation.

At a meeting with Warden Johnson in 2012, also attended by a union representative, Flores was specifically asked why he searched each of the names he had searched on DELJIS. Following the meeting, Warden Johnson concluded that Flores grossly abused his DELJIS privileges and that it was evident that he attempted to deceive both the DELJIS and IA investigators. Moreover, the Warden pointed out that Hobbs had lodged an official external complaint alleging that Flores had improperly accessed

5

DELJIS and used that information to threaten him, and the DELJIS summary log revealed that Flores did access Hobbs's records at least 16 times.

In February 2012, Janet Durkee, DOC Director of Human Resources and Development, informed Flores that the DOC was considering dismissing him from employment based on the results of the investigation into his inappropriate and unauthorized use of DELJIS for non-work related purposes. He was informed of the conclusions that he accessed criminal history record information in DELJIS without business-related reasons, that he was dishonest with the DELJIS and IA investigators by misrepresenting his unauthorized searches as work-related, and that he performed non-work-related, unauthorized DELJIS searches while on State time.

Flores met with Commissioner Danberg on March 6, 2012, which meeting was also attended by Warden Johnson, Durkee, and union officials. In reaching his ultimate decision, the Commissioner considered three factors: (1) on numerous occasions Flores accessed the criminal history of Hobbs and his acquaintances; (2) the investigation revealed that Flores accessed the criminal histories of children of DOC employees; and (3) Flores accessed the file of Dr. Earl Bradley and claimed that State Representative John Atkins contacted Flores and asked if Bradley was incarcerated at Sussex.

At the meeting, Flores argued that the DELJIS rules were not well understood, and were frequently violated. He also noted that concern for his daughter influenced him to run some of the searches. While the Commissioner found these arguments persuasive, he concluded that Flores was not being forthright during the investigation or during the

6

meeting. For example, the Commissioner found that although Flores denied running the names of any of Hobbs' associates, when Flores was confronted with the facts revealed by the summary log that he had searched the names of at least two people associated with Hobbs, Flores indicated that they must have had business with the DOC, which the investigation revealed untrue.

Flores also claimed to have searched the children of senior DOC employees at those employees' requests, but those employees had direct access to DELJIS, and they denied ever asking Flores to do such a search. Finally, the Commissioner personally spoke with Representative Atkins, and he denied calling and asking Flores for information regarding Mr. Bradley. Since Commissioner Danberg felt that Flores was not being candid, and he believed that the hallmark of a law enforcement officer was honesty, he determined that dismissal was the appropriate penalty.

Following the termination decision, Flores filed a grievance through the union, but the union ultimately voted not to take any further action. Flores amended his EEOC charge by also alleging a claim of retaliation. On October 15, 2012, Flores' EEOC complaint was denied. He thereafter initiated this lawsuit in the District Court.

**II.**[4]

Flores first claims that appellees discriminated against him based on his race and national origin when he was not promoted to the most recent captain position for which he applied ("discrimination claim") and that the District Court erred in finding the evidence insufficient to support Flores' claim that appellees' articulated reason for not selecting him for the captain position was a pretext for discrimination. The parties do not dispute that the familiar 3-step burden-shifting inquiry under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), applies to Flores' discrimination claim.

To satisfy the first step of the inquiry, Flores must establish a prima facie case of discrimination in the decision to not promote him to the captain position. To do so, he must show that: (a) he was a member of a protected class; (b) he was qualified for the position to which he applied; (c) he suffered some form of adverse employment action; and (d) the adverse employment action occurred under circumstances that give rise to an

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary. *Seamans v. Temple Univ.*, 744 F.3d 853, 859 (3d Cir. 2014). A moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable inferences must be drawn in favor of the nonmoving party. *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir. 2009).

8

inference of unlawful discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). If he is able to show a prima facie case of discrimination at step one, the burden of production shifts to appellees at step two to "articulate one or more legitimate, non-discriminatory reasons for [their] employment decision." *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 494 (3d Cir. 1995). If appellees are able to articulate such a reason, the burden shifts back to Flores at step three, who must demonstrate that appellees' proffered reasons were merely a pretext for intentional discrimination. *McDonnell Douglas*, 411 U.S. at 804. While the burden of production shifts, the employee always has the ultimate burden of persuasion to prove intentional discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999).

Applying the *McDonnell Douglas* framework, we agree with the District Court that Flores failed to provide sufficient evidence from which a reasonable juror could conclude that appellees' legitimate, nondiscriminatory reason was a pretext for intentional discrimination on the part of appellees.[5] Assuming, without deciding, that Flores is able to make out a prima facie case, the burden shifts to appellees, who have proffered a legitimate, nondiscriminatory reason for denying Flores the promotion. Specifically, appellees presented evidence that the panel unanimously ranked him after the top two candidates for the captain position based on Flores' performance in the

---

[5] Although appellees argued in the District Court that Flores had failed to satisfy the first step of the *McDonnell Douglas* framework by making a prima facie case, the Court did not address this argument, and assumed, without deciding, that the first step had been satisfied.

interview. For example, not only did Valentino indicate to Flores that he stumbled with responses at his interview, but the interview notes of the panel members reveal that the panel was very impressed with the chosen candidate's answers to the questions, and that Flores rambled in attempting to answer the interview questions. However, at the third step in the inquiry Flores has failed to show sufficient evidence from which a reasonable juror could conclude that appellees' legitimate, nondiscriminatory reason was a pretext for intentional discrimination against Flores based on his race and national origin. Accordingly, the District Court properly granted summary judgment in favor of appellees on Flores' claim of discrimination in violation of Title VII and § 1981.

**III.**

Flores also claims that appellees terminated his employment in retaliation for his complaints of discrimination in violation of Title VII ("retaliation claim"). As with his discrimination claim, claims alleging retaliation are analyzed under the *McDonnell Douglas* burden-shifting framework.

To establish a prima facie case of retaliation, Flores is required to show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between his protected activity and the adverse action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). To satisfy the causation component of a prima facie case, Flores must present evidence that could support the inference of a causal connection between his complaints of discrimination and the

10

termination of his employment. *See Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000).

If Flores makes out this prima facie claim, the burden shifts to appellees, who must articulate a legitimate, nondiscriminatory reason for terminating his employment, and if they do so, the burden shifts back to Flores to demonstrate that the proffered reasons were merely a pretext and that retaliation was the real reason for the adverse employment action. S*ee Moore*, 461 F.3d at 342. Thus, Flores must ultimately prove that appellees' retaliatory animus was the "real reason" for the termination of his employment. *See Farrell*, 206 F.3d at 286 (using the term "real reason" to describe the plaintiff's ultimate burden at the pretext stage). To prove causation at the pretext stage, Flores must show that he would not have been fired "but for" his protected activity. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *cf. Farrell*, 206 F.3d at 286 (distinguishing "the test for causation under the prima facie case with that for pretext").[6]

---

[6] Some appellate courts have concluded that the but-for causation standard, *see Nassar*, 133 S. Ct. at 2534, applies only at the pretext stage and does not alter the causation prong of the prima facie stage of the retaliation analysis. *See Foster v. Univ. of Maryland-Eastern Shore*, 787 F.3d 243, 252 (4th Cir. 2015) ("[T]he *McDonnell Douglas* framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action. *Nassar* does not alter the legal standard for adjudicating a *McDonnell Douglas* retaliation claim."); *Feist v. La. Dep't of Justice, Office of Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *Nassar*, 133 S. Ct. at 2533) ("'After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation,' which the employee accomplishes by showing that the adverse action would not have occurred 'but for' the employer's retaliatory motive . . . .") (internal citations omitted). The Fourth

Even assuming, without deciding, that Flores has demonstrated a prima facie case at the first stage of the *McDonnell Douglas* framework, appellees have provided sufficient evidence supporting the conclusion that Flores was fired based on the beliefs that Flores had committed extensive DELJIS violations, and ultimately, that Flores was not being honest about his DELJIS misuse. As the District Court notes, although Flores was afforded opportunities to explain his conduct, and Danberg maintained that he had been prepared not to terminate Flores, following his meeting with Flores, Danberg ultimately concluded that Flores was not telling the truth and that termination of employment was warranted. Flores has failed to provide sufficient evidence to show that

Circuit noted, "the burden for establishing causation at the prima facie stage is less onerous" than satisfying the causation standard at the pretext stage. *Foster*, 787 F.3d at 251 (internal quotation marks and citation omitted). Indeed, applying the but-for causation test at the prima facie stage would arguably "be tantamount to eliminating the *McDonnell Douglas* framework in retaliation cases," and "[h]ad the *Nassar* Court intended to retire *McDonnell Douglas* and set aside 40 years of precedent, it would have spoken plainly and clearly to that effect." *Id.* In this case, the District Court explicitly applied the but-for causation test at the prima facie stage and found that, although Flores "has established the first and second prongs of a prima facie case, . . . he has not demonstrated that the filing of the EEOC charge was the 'but for' reason for the termination." *Flores*, 84 F. Supp.3d at 350; *see id.* (citing *Nassar*) ("The protected activity must be the 'but-for' cause of the defendants' alleged retaliatory action under the causation prong of the prima facie case."). We need not address the causation element of the first stage of the *McDonnell Douglas* framework, however, since even assuming, *arguendo*, that Flores can show a prima facie case of retaliation, he is unable to satisfy the third step of the applicable inquiry.

12

"but for" his complaint of discrimination he would not have been fired. *See Nassar*, 133

S. Ct. at 2533.[7]

## IV.

Accordingly, for the foregoing reasons, we affirm the Order of the District Court

granting appellees' summary judgment motions.

---

[7] The District Court also denied Flores' claim of a denial of his 14th Amendment equal protection rights under 42 U.S.C. § 1983. *See Flores*, 84 F. Supp.3d at 351. However, as appellees point out in their brief, Flores fails to specifically pursue this argument in his brief. Therefore, any argument regarding Flores' claim of the denial of equal protection pursuant to § 1983 has been waived. *See United States v. Menendez,* 831 F.3d 155, 175 (3d Cir. 2016) (quoting *Travitz v. Ne. Dep't ILGWU Health & Welfare Fund*, 13 F.3d 704, 711 (3d Cir. 1994)) ("When an issue is not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal."); *see also* Fed. R. App. P. 28(a)(8) (stating that a party's brief must contain "the argument" including "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . ., but not squarely argued, are considered waived."). Even if the issue were not waived, we would affirm the District Court's grant of appellees' summary judgment motions on this claim. We have treated § 1983 claims similarly to Title VII and § 1981 claims, *see Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 432 (3d Cir. 1997), and to succeed on his equal protection claim under § 1983, Flores was required to show "[p]roof of racially discriminatory intent or purpose." *See Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 543 (3d Cir. 2011) (quoting *Antonelli v. New Jersey*, 419 F.3d 267, 274 (3d Cir. 2005)). As explained above, Flores is unable to show that discriminatory animus motivated appellees.